## EDMUND C. BRAMHALL *vs.* JOHN FLOOD.

A mortgage described the mortgage debt as a note of $1000. No such note had ever been given, but the mortgagor was indebted to the mortgagee for goods sold to the amount of $756, and the latter had agreed to furnish additional goods up to the sum of $1,000, and the mortgagor had offered to give him security for the whole, and made this mortgage for that purpose. Held that the mortgage was void against a subsequent attaching creditor.

At the time of the attachment the mortgagee had a bill for a foreclosure pending, and the foreclosure subsequently became absolute by failure to redeem. After the attachment and before the levy of the execution the mortgagee brought a bill for the reformation of the mortgage in accordance with the facts, making only the mortgagor respondent, and afterwards obtained a decree reforming the mortgage. Held that the attaching creditor was not affected by these proceedings.

EJECTMENT, brought to the Superior Court in Fairfield County, and tried on the general issue closed to the court. The following facts were found in part by a committee and in part by the court:

The plaintiff attached the demanded premises as the property of one George G. Reed, on the 14th day of July, 1869, and having obtained judgment, levied an execution on the property and had it regularly set off to him thereon, on the 4th of September, 1871. Reed had previously, on the 15th of February, 1868, mortgaged the premises, of which he was then owner, to one Thomas R. Ferris, who had brought a bill for a foreclosure of the mortgage on the 21st of June, 1869, which suit was pending when the plaintiff attached the prop-

erty, and in which a decree of foreclosure was obtained at the August term of the Superior Court in Fairfield County, in the year 1871. The 1st day of March, 1872, was fixed in the decree as the limit for redemption, and there was no redemption within the time limited. The defendant was the tenant in possession under a party who had acquired by attachment and levy whatever title Ferris had acquired in the property by his mortgage and foreclosure.

The only questions in the case were as to the validity of the mortgage to Ferris, and as to the effect upon the plaintiff's rights of the proceedings pending in court at the time the plaintiff attached.

The defeasance of the mortgage was as follows: "The condition of this deed is such, that whereas the said grantor is justly indebted to the said grantee in the sum of one thousand dollars, as evidenced by his promissory note of even date herewith, payable to the said grantee or order one year from the date hereof; now therefore, if said note shall be well and truly paid according to its tenor, then this deed shall be void, otherwise to remain in full force and effect."

No such note as the one described was ever given by Reed to Ferris, nor was any note for $1,000, and Reed was never indebted to Ferris to that amount.

On or about the 15th day of February, 1868, Reed was indebted to Ferris for goods sold in the sum of $471.26. At this time Reed desired Ferris to give him credit to the amount of $1,000, and it was agreed between them that Ferris should sell goods to Reed, to the amount, with those already sold, of $1,000, and allow him one year to pay for them, and that Reed should secure the payment of that sum. It was not agreed that a note for $1,000 should at any time be given, but it was agreed that certain outstanding notes and accepted drafts should be renewed, as they should become due and payable.

The mortgage was prepared and executed by Reed at Redding in this state, when Ferris was not present, and when he had no knowledge of the transaction, and was delivered to him by Reed at Albany in the state of New York, as the prom-

ised security for the $1,000, made up as above stated; and he received the mortgage, believing that Reed had legally and properly drawn the same, and that it was a valid security for the debt then existing, and for such further indebtedness as should thereafter accrue, to the amount of $1,000 in all.

After Ferris had received the mortgage, he sold and delivered to Reed, relying upon the mortgage as security, other goods to the amount of $323.

While the suit for a foreclosure was pending, at the August term, 1869, the petitioner, Ferris, was allowed to amend his petition by stating the indebtedness of Reed to him in accordance with the facts, and at the August term of the court, in the year 1871, he brought a petition for a correction of the mortgage itself, making the description of the indebtedness intended to be secured by it what it in fact was, instead of a note of one thousand dollars, which petition was granted at the October term of the court, 1871, and the mortgage reformed as prayed for. The only party made respondent to this bill was the mortgagor, Reed.

Upon these facts the case was reserved for the advice of this court.

*Taylor* and *M. W. Seymour,* for the plaintiff.

*White,* for the defendant.

PARK, J. It was held, as long ago as the case of *Pettibone* v. *Griswold,* 4 Conn. R., 158, that under our recording system the condition of a mortgage deed must give reasonable notice of the incumbrance on the land mortgaged, in order to affect the creditors of the mortgagor, who have no notice of the real incumbrance. The court say, page 162: " A creditor is not obliged by law to make inquiry *in pais* concerning the liens on the property of his debtor; but on application to the record he may acquire all the information which his interest demands. At least he must have the power of knowing from this source the subject matter of the mortgage, that his investigation may be guided by something which will terminate in a certain result. And what is not of

less importance, the incumbrance on the property must be so defined as to prevent the substitution of every thing which a fraudulent grantor may devise to shield himself from the demands of his creditors."

This case is the leading one in this state regarding the requisite certainty in the description of a mortgage debt. It has been followed by the cases of *Shepard* v. *Shepard*, 6 Conn. R., 37, *Stoughton* v. *Pasco*, 5 id., 442, *Hubbard* v. *Savage*, 8 id., 215, *Booth* v. *Barnum*, 9 id., 286, *Sanford* v. *Wheeler*, 13 id., 165, *North* v. *Belden*, id., 376, *Hart* v. *Chalker*, 14 id., 77, and many others which it is unnecessary to mention. In *Sanford* v. *Wheeler* the court use this language: "The infirmity in this mortgage is not that the true amount of the debt is not set forth, but that a claim altogether different in its nature, character and amount from the one referred to in the condition of the mortgage deed is attempted to be substituted for the debt described; the claim of a surety and not of a creditor. And however equitable as between the parties to the mortgage it may be that it should stand as security not only for the debt really due, but as an indemnity also for the liabilities of the mortgagee, yet as against third persons interested it can no more be made to do this than a mortgage given to secure a bond debt of a specified description can be made to remain as security for the payment of a book debt." The debt described in the mortgage deed in that case was an unconditional note of a certain amount, which was made up in part by a debt due from the mortgagor to the mortgagee and in part by liabilities assumed as surety by the mortgagee to the creditors of the mortgagor on their claims against him, which claims were still outstanding against the mortgagor and mortgagee. In *Hart* v. *Chalker* the defect consisted in omitting to mention in the mortgage the amount of the note attempted to be secured, which was otherwise fully described; yet the court held that the mortgage deed was fatally defective as against a subsequent incumbrancer. The court say: "It is far better that one honest creditor should have his security postponed to another perhaps equally honest, who has apparently a subsequent title, rather than, that the valu-

Bramhall *v.* Flood.

able provisions of our statute relative · to the recording of deeds should be nullified or its vitality impaired." The case of *North* v. *Belden* is an important one upon the subject of mortgage securities, and is exceedingly strong against the claim of the present defendant.

These cases fully show that the mortgage deed, in the case under consideration, is fatally defective as against the plaintiff. The indebtedness described in the mortgage is that of a note for the sum of one thousand dollars, when no such note .existed between the parties, nor is it pretended that such a note was ever agreed to be given. There was an indebtedness between the parties growing out of a certain note at two months, and a certain book account, amounting in the aggregate to the sum of $756.07 ; but to substitute this indebtedness for the one described in the mortgage, would bring upon creditors all the mischief so forcibly described in the case of *Hart* v. *Chalker*, and to prevent which our statute, and the decisions in the cases cited, were made.

But it is said that the case of *French* v. *Burns*, 35 Conn. R., 359, modifies the law of the cases referred to; but we fail to see any ground for this claim. The principle of that case is that an absolute conveyance under certain circumstances will be treated as a mortgage, so far as the parties to the conveyance, and subsequent purchasers with full knowledge of all the facts, are concerned. The principle of that case has no application to the question under consideration.

But it is said that subsequently to the attachment of the property by the plaintiff the mortgagee brought a petition to correct the error we have considered, and it was afterwards corrected, and the correction takes relation back to the commencement of the petition to foreclose the equity of redemption, which was previous to the attachment of the property by the plaintiff. We see nothing in this claim. The mortgage was fatally defective, so far as the plaintiff was concerned, at the time the attachment was made, and no subsequent proceedings could cure the defect. He had a lien on the property by the attachment, to secure his claim. His

position was similar to what it would have been if he had taken a mortgage of the property at that time to secure the same debt. If he had done this his case would have been similar to that of *Hart* v. *Chalker.*

And we see nothing in the claim that at the time the present suit was brought the defendant was in possession of the property under the mortgagee, who had previously obtained possession by virtue of an execution issued upon a judgment obtained by him in a suit of ejectment based upon his mortgage deed. What we have said in reply to the last claim of the defendant is a full answer to this claim. The suit was based upon the mortgage deed. If the deed was defective so far as the plaintiff was concerned, then the suit and judgment growing out of it must fall to the ground. They cannot be set up as a defence against the plaintiff, because they cannot, as against him, make a better title in the mortgagee than he had before. The plaintiff had the best title to the property when he levied his execution, which took relation back to the attachment of the property.

We advise judgment for the plaintiff.

In this opinion the other judges concurred.